UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, | 1:20-13115-NLH-MJS |
| Plaintiff, | **OPINION** |
| v. | |
| KEVIN L. GARTH and TYRONE L. GARTH, | |
| Defendants. | |

**Appearance:**

TIFFANY MILLIOEN
D'ARCAMBAL OUSLEY & CUYLER BURK LLP
40 FULTON STREET
SUITE 1501
NEW YORK, NY 10038

    *Counsel for New York Life Insurance Company*

**HILLMAN**, District Judge

    This action is one for interpleader relief and comes before the Court on Plaintiff New York Life Insurance Company's ("Plaintiff") Motion for Interpleader Deposit pursuant to 28 U.S.C. § 1335.  For the reasons discussed below, contingent upon satisfaction of a condition-precedent, Plaintiff's motion will be granted.

**BACKGROUND**

1

Mae R. Garth ("Insured") was a member of AARP and eligible to apply for life insurance coverage under group insurance policy number AA-48, which was issued by Plaintiff to the Trustee of AARP Life Insurance Trust (the "Group Policy").  (ECF No. 1 ¶6.)  The Insured applied for life insurance coverage and designated Defendants Kevin Garth ("Kevin") and Tyrone Garth ("Tyrone") (collectively "Defendants"), her sons, as primary beneficiaries to equal shares of the policy proceeds.  (Id. ¶7.)  Pursuant to the Group Policy, the Company issued AARP Level Benefit Term Life certificate number A2265391 (the "Policy") to the Insured.  (Id. ¶8.)  On or about August 17, 2005, the Insured elected to upgrade her coverage from $10,000.00 to $14,000.00.  (Id. ¶9.)  Pursuant to the Group Policy, the Company issued AARP Accidental Death Benefit ("ADB") Certificate Rider to the Insured.  (Id. ¶10.)  Plaintiff alleges that upon information and belief, the Insurer died on January 27, 2020 as a result of multiple gunshot wounds and the manner of death was homicide.  (Id. ¶11.)

As a result of Insured's death, Policy death benefits in the amount of $64,000 (the "Death Benefit"), which is comprised of $14,000 in Base benefits and $50,000 in ADB benefits, became due to a beneficiary or beneficiaries and Plaintiff expressly "concedes liability to that effect."  (Id. ¶12.)  Plaintiff explains that upon information and belief, Tyrone was arrested

2

on or about January 27, 2020 in Colorado in connection with the death of the Insured.  Thereafter, Tyrone was charged with murder in the first degree.  (Id. ¶13.)  Plaintiff asserts that Tyrone may be disqualified from receiving the proceeds pursuant to federal common law and the Colorado Slayer Statute, C.R.S. 15-11-803.  (Id. ¶14.)  Plaintiff explains that if Tyrone's right to the Death Benefit is determined to be revoked pursuant to law, it would be as if he disclaimed his right to the Death Benefits.  (Id. ¶15.)

    Moreover, pursuant to the terms of the Policy, if Tyrone is found to be a principal or accomplice in willfully bringing about the death of the Insured, then it would be as if he predeceased the Insured.  (Id. ¶17.)  Plaintiff explains that if it is determine that Tyrone disclaimed his right to Death Benefits or predeceased the Insured, disposition of the Death Benefit would follow the beneficiary rules set forth in the Policy.  (Id. ¶18.)  The beneficiary rules of the Policy provide that "[t]he Death Benefit will be paid in equal shares to the first beneficiary(ies) who survives YOU by 15 days."  (Id. ¶19.)  Thus, according to the Policy, if Tyrone is disqualified under law or the Policy and treated as having disclaimed his right to the Death Benefit or predeceased the Insured, pursuant to the terms of the Policy, 100% of the Death Benefit would be payable to Kevin.  (Id. ¶20.)

3

Plaintiff explained that Kevin has asserted a claim for the Death Benefit on May 18, 2020. (Id. ¶21.) Following this, Plaintiff paid Kevin one-half of the Death Benefit to the Policy, in the amount of $32,000. (Id. ¶22.) Plaintiff explains that there have been no other claims for the Death Benefit and Plaintiff cannot determine factually or legally who is entitled to the remaining one-half of the Death Benefit (the "Remaining Death Benefit"). (Id. ¶23.) Plaintiff argues that "[b]y reason of the actual or potential claims of the interpleading parties, the Company is or may be exposed to multiple liability." (Id.)

Plaintiff contends it is willing to pay the Remaining Death Benefit, plus applicable interest, if any, in accordance with the Policy to whomever this Court shall designate. Recognizing that a dispute now exists between Kevin and Tyrone regarding proper disposition of the Remaining Death Benefit, on September 23, 2020, Plaintiff, filed an interpleader complaint with this Court. (ECF No. 1.) On September 23, 2020, Plaintiff filed the present Motion for Interpleader. (ECF No. 3.) Plaintiff's Motion seeks an order: (1) permitting Plaintiff to deposit a check equal to the $32,000 plus applicable interest, if any (the "Interpleader Funds"), into the Registry of this Court; (2) discharging Plaintiff from any and all liability to the Defendants relating to the payment of the Interpleader Funds and

4

interest thereon upon the distribution of the Interpleader Funds by Plaintiff; and (3) enjoining Defendants from instituting or prosecuting any proceeding affecting the Policy or Interpleader Funds due thereunder.  Neither Defendant has opposed Plaintiff's Motion.

## DISCUSSION

### A. Subject matter jurisdiction

Plaintiff asserts that this Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1335.

28 U.S.C. § 1335(a) provides that district courts shall have "original jurisdiction of any civil action of interpleader" filed by any person, firm, corporation, association, or society "having in his or its custody or possession money or property of the value of $500 or more" if

> (1) [t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) or section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . .; and if
> (2) The plaintiff has deposited such money or property or has paid the amount . . . into the Registry of the court, . .  or has given bond payable to the clerk of the court in such amount and with such surety as to the court or judge may deem proper[.]

28 U.S.C. § 1335(a).  Here, Plaintiff possesses $32,000, all of which is at issue in this action, thereby satisfying the amount in controversy requirement of § 1335(a).  Likewise, Plaintiff satisfies § 1335(a)(1).  Kevin is an individual who is a citizen

of New Jersey and Tyrone is an individual who is a citizen of Colorado. (Id. ¶¶2-3.) As such, diversity of citizenship exists amongst the claimants to the proffered funds and § 1335(a)(1) is therefore satisfied.

The final prerequisite to establishing this Court's subject matter jurisdiction presents is a bit more complicated because of a quirk in the current version of this Court's local rules. Plaintiff has not yet satisfied § 1335(a)(2), which requires it to deposit such money or property into the Registry of the Court or otherwise deposit a bond payable to the Clerk of the Court in the full amount at issue into the Court's registry prior to bringing an interpleader action. As the Third Circuit has noted, "[a] proper deposit or bond is a jurisdiction prerequisite to bringing an [action in] interpleader." U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 210 (3d Cir. 1999) (citing 28 U.S.C. § 1335(a)(2) (1994); In re Sinking of M/V Ukola, 806 F.2d 1, 5 (1st Cir. 1986)). As explained by Wright & Miller, the

> language of the interpleader act indicates that it is a condition on jurisdiction under the statute that the stakeholder deposit with the Registry of the court the money or property that is the subject of the multiple claims, or that the stakeholder give a bond in a sufficient amount to insure compliance with any future order or judgment of the court in the action. The case will not proceed unless this jurisdictional requirement is satisfied[.]

6

Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1716 (3d ed. 2001) (internal footnotes omitted).

Problematically, our Local Civil Rules explicitly prevent such deposits without a court order: "No money shall be sent to the Court or its officers for deposit into the Court's Registry without a court order by the Judge assigned to the case."  L. Civ. R. 67.1(a)(1)(A); United States Life Ins. Co. in City of New York v. Holtzman, 723 F. App'x 141, 145 (3d Cir. 2018) (citing L. Civ. R. 67.1(a)(1)(A)) ("Under the local rules, [interpleading plaintiff] could not have deposited the funds absent a court order to do so.").  Therefore, our Local Civil Rules directly conflict with the interpleader statute's jurisdictional prerequisite.[1]

Faced with a similar situation, another Court within this District decided not to dismiss an action for lack of subject matter jurisdiction but instead decided to permit Plaintiff an opportunity to perfect jurisdiction by depositing the funds at issue with the Court's Registry.  U.S. Life Ins. Co. in the City of New York v. Holtzman, No. 14-cv-00113, 2014 WL 5149707, at *4

---

[1] The Court notes that this conflict would be eliminated if the Court adopts a proposed amendment to L. Civ. R. 67.1 to exempt interpleader actions and to allow deposits into the court registry without a court order when contemplated by statute. The proposed amendment has been published for public comment and is currently awaiting the Court's final approval. See https://www.njd.uscourts.gov/sites/njd/files/67.1%28a%29%281%29%28A%29notice.pdf (last visited April 2, 2021).

7

(D.N.J. Oct. 14, 2014)("I do not find that this case should be dismissed for U.S. Life's failure to deposit the disputed funds; rather, the Court is directing U.S. Life to deposit $109,430.76 into the Registry of the Court.").

The defendant appealed, arguing that "jurisdiction was lacking because U.S. Life failed to deposit the funds at issue into the Registry at the time the complaint was filed" and that the district court erred by permitting the plaintiff to cure its deficiency instead of dismissing the action. Holtzman, 723 F. App'x at 145. The Third Circuit, in affirming the district court, found that

> under the circumstances of this case, the District Court properly allowed U.S. Life to perfect jurisdiction.
>
> Under the local rules, U.S. Life could not have deposited the funds absent a court order to do so. See N.J. Local Civ. R. 67.1(a)(1)(A). Having determined that interpleader was proper, the District Court conditioned its October 14, 2014 order denying the motion to dismiss, and granting the cross-motion for interpleader relief, upon U.S. Life depositing the $109,430.76 into the Court's Registry. See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C., 782 F.3d 186, 194 (5th Cir. 2015) (noting that, in "the first stage of interpleader," the court only is concerned with whether the jurisdictional requirements have been met – "whether multiple claims have been asserted, or may be asserted, against a disinterested stakeholder, not whether those claims have merit."). Once U.S. Life responded to the Court's directive to deposit, the District Court had subject matter jurisdiction: its order discharging U.S. Life

8

>  took effect, and it properly considered the
>  merits of the adverse claims to the funds.

Id.

Guided by Holtzman, this Court will Order Plaintiff to deposit the funds at issue with the Court's Registry within ten (10) days of this Opinion, and will condition its exercise of subject matter jurisdiction in this action upon Plaintiff's compliance with that Order.  Once that condition-precedent is satisfied, this Court will exercise subject matter jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1335, as this matter involves money or property valued above $500 and diversity of citizenship exists amongst the claimants.

### B. Legal Standard

There are two sources of interpleader relief in federal court: statutory interpleader under 28 U.S.C. § 1335, and rule interpleader under Federal Rule of Civil Procedure 22. Plaintiff brings this interpleader action under the interpleader statute.  Interpleader allows "a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed. 2001).  Thus, as a result of an interpleader action, "'[t]he competing claimants are left to

9

litigate between themselves,' while the stakeholder is discharged from any further liability with respect to the subject of the dispute." Stonebridge Life Ins. Co., 89 F. Supp. 3d at 625-26 (quoting Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007)).

An interpleader action usually proceeds in two stages. Id. at 626.  First, the Court must determine whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants.  Id.  Second, the Court must determine the rights of the claimants to the funds. Id.  With respect to the first stage, "[t]he key prerequisite . . . is that there be two or more claimants to the fund who are 'adverse' to each other." Id. (quoting New Jersey Sports Prods., Inc. v. Don King Prods., Inc., 15 F. Supp. 2d 534, 539 (D.N.J. 1998)) (citing Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedures § 1705). "This requirement is not met where (a) one of the claims clearly is devoid of substance; (b) one of the claimants is under the control of the stakeholder or has dropped his claim, such that the fear of multiple liability is baseless; or (c) the claims are not asserted against the same fund, or the stakeholder may be liable to both claimants." Id. (quoting Allstate Settlement Corp. v. United States, No. 07-cv-5123, 2008 WL 2221897, at *3 (E.D. Pa. May 28, 2008)).

10

### C. Analysis

Plaintiff asserts that it is a disinterested party in the Defendants' dispute. Plaintiff represents that it simply serves as the insurance company that issued the Policy and the AARP Accidental Death Benefit to the Insured. Plaintiff alleges that it cannot determine factually or legally who is entitled to the Remaining Death Benefit because if Tyrone is disqualified under law or the Policy and treated as having disclaimed his right to the Death Benefit or predeceased the Insured, then pursuant to the terms of the Policy, 100% of the Death Benefit would be payable to Kevin. Neither Defendant has appeared in this action and therefore, has not responded to Plaintiff's Complaint. At this point, there is a genuine dispute as to which Defendant is entitled to the Remaining Death Benefit.

In light of the facts presented, the Court finds that Plaintiff is a disinterested party and therefore, an appropriate interpleader plaintiff. If the Court finds that Tyrone is disqualified and treated as having disclaimed his right to the Death Benefit or predeceased the Insured, then the Remaining Death Benefit, plus applicable interest, if any, the funds at issue, would be payable, in all likelihood, to Kevin.

Alternatively, if the Court finds that Tyrone is not disqualified und treated as having disclaimed his right to the Death Benefit or predeceased the Insured, then the funds at

11

issue may belong to Tyrone.  In either event, ownership of the funds is a matter to be determined later.  Because ownership is to be determined at a later date, Plaintiff is not in a position to deliver any portion of the funds to either Defendant until such time as that issue is decided, as doing so would expose Plaintiff to the potential for duplicative liability.  The Court therefore finds this interpleader action appropriate.

As such, this Court will grant Plaintiff interpleader relief, discharge Plaintiff from any and all further liability to the Defendants relating in any way to the Policy and/or the Remaining Death Benefit, and enjoin Defendants from instituting or prosecuting any proceeding in court affecting the Policy or Interpleader Funds due thereunder, conditioned upon its timely deposit of the funds at issue into the Court's registry.

## CONCLUSION

For the reasons expressed above, and conditioned upon Plaintiff depositing $32,000, representing the Interpleader Funds, plus applicable interest, if any, into the Registry of the Court within ten (10) days of this Opinion, the Court will grant Plaintiff's Motion for Interpleader Relief (ECF No. 3).

An appropriate Order will follow.


Date: April 5, 2021              s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.