UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, | 1:20-cv-13115-NLH-MJS |
| Plaintiff, | OPINION |
| v. | |
| KEVIN L. GARTH and TYRONE L. GARTH, | |
| Defendants. | |

Appearances:

TIFFANY MILLIOEN
D'ARCAMBAL OUSLEY & CUYLER BURK LLP
40 FULTON STREET
SUITE 1501
NEW YORK, N.Y. 10038

   On behalf of Plaintiff

JAMAL S. BARNES
BARNES, DYER & ASSOCIATES LLC
98 BROAD ST.
BLOOMFIELD, N.J. 07003

   On behalf of Defendant Kevin L. Garth

**HILLMAN**, District Judge

   Pending before the Court are Defendant Kevin L. Garth's ("Kevin") motion to vacate entry of default, (ECF 26), and Plaintiff New York Life Insurance Company's ("Plaintiff") motion for entry of default judgment against Defendant Tyrone L. Garth ("Tyrone"), (ECF 30). For the reasons expressed below, both

motions will be granted.

**I.   Background**

Plaintiff is a mutual insurance company organized under New York law and principally based in New York, New York. (ECF 1 at ¶ 1). Kevin is a domiciliary of Burlington County, New Jersey, while Tyrone is a domiciliary of Arapahoe County, Colorado. (Id. at ¶¶ 2-3).

Mae R. Garth ("Mae") was an AARP member who was issued life-insurance coverage by Plaintiff through a group policy in August 2005. (Id. at ¶¶ 6, 8). Mae's sons, Kevin and Tyrone (collectively "Defendants"), were designated as the primary beneficiaries to equal shares of the policy proceeds. (Id. at ¶ 7). Mae upgraded her coverage from $10,000 to $14,000 on August 17, 2005, and an Accidental Death Benefit Certificate Rider was issued to her on October 8, 2009. (Id. ¶¶ at 9-10).

Mae was killed on January 27, 2020, and Tyrone was arrested that same day in Aurora, Colorado and later charged with her murder. (Id. at ¶¶ 11, 13). As a result, benefits totaling $64,000 ($14,000 base plus $50,000 in accidental death benefits) became due to Defendants. (Id. at ¶ 12). Kevin asserted a claim on May 18, 2020 and $32,000 – representing his share of the policy proceeds – was paid out to him on May 28, 2020. (Id. ¶¶ at 21-22).

The terms of the policy state that "[n]o payment will be

made to any person(s) if such person(s) is the principal or an accomplice in willfully bringing about YOUR death.  Payments will be made in accordance with this section as though that person(s) had died before YOU."  (Id. at ¶ 16; ECF 1-2 at 6).  The policy further states that "[t]he Death Benefit will be paid in equal shares to the first beneficiary(ies) who survives YOU by 15 days."  (ECF 1 at ¶ 19; ECF 1-2 at 6).

Plaintiff filed the instant interpleader complaint on September 23, 2020, claiming that no other claim to the policy had been made and that it was ready and willing to pay out the remainder of the policy as instructed by the Court.  (ECF 1 at ¶¶ 23-24).  It also acknowledged that Tyrone may be disqualified or deemed to have disclaimed his rights to policy proceeds under the express terms of the policy, common law, or Colorado's slayer statute, Colo Rev. Stat. Ann. § 15-11-803. (Id. at ¶¶ 14-15, 17-18).  Plaintiff explained that if Tyrone is deemed to have disclaimed his rights or been disqualified, the entirety of the policy proceeds would go to Kevin.  (Id. ¶ at 20).

Plaintiff moved for interpleader deposit on September 23, 2020, (ECF 3), which the Court granted subject to Plaintiff depositing funds into the Registry of the Court, (ECF 7; ECF 8).  Upon distribution of the funds as ordered, the Court also discharged Plaintiff from any further liability as to Defendants relating to the policy or deposited funds and enjoined

Defendants from instituting or prosecuting future proceedings relating to the policy or funds.  (ECF 7 at 12; ECF 8 at 2-3).

The interpleader deposit – totaling $32,383.50 – was received on April 13, 2021.  (ECF 10).  Plaintiff thereafter requested default against Defendants, (ECF 9), which was entered on April 30, 2021.  Included in its request, Plaintiff's counsel attested that Defendants were both served, she understood that Kevin was represented by counsel but no appearance had been entered, and Tyrone was incarcerated at Arapahoe County Detention Facility.  (ECF 9-1 at ¶¶ 3, 5, 8, 10).  Counsel for Kevin entered appearance on September 10, 2021, (ECF 13), and in a January 28, 2022 letter to Magistrate Judge Matthew J. Skahill, Plaintiff's counsel indicated that she had expressed to Kevin's counsel that Plaintiff would be amenable to vacating default, but noted that no responsive pleading or other action had yet been taken by Kevin, (ECF 14).

Judge Skahill held a status conference on February 28, 2022 and thereafter ordered Kevin's counsel to update his firm contact information with the Clerk and move to vacate entry of default and for Plaintiff to detail steps taken to alert Tyrone of the ongoing proceedings.  (ECF 17).  Plaintiff's counsel responded in a March 7, 2022 letter to Judge Skahill stating that Tyrone was believed to be incarcerated at Arapahoe County Detention Facility in Centennial, Colorado based on a search of

4

the "Inmate Lookup" feature on the Arapahoe County Sheriff's Office website. (ECF 18 at 1). Counsel explained that Tyrone was personally served by an Arapahoe County deputy sheriff on October 1, 2020, the request and declaration in support of entry of default were mailed to him on or about April 29, 2021, a letter notifying him of the status conference with Judge Skahill was mailed to him on or about February 8, 2022, counsel had communicated with Tyrone's public defender prior to commencement of the action and received permission to communicate directly with him, and a waiver form – providing an opportunity to disclaim any interest in the policy proceeds – was mailed to him but never returned. (Id. at 1-2). Counsel for either Defendant did not appear to the subsequent status conference, (ECF 19), and on September 7, 2022, Plaintiff's counsel filed a letter seeking permission from Judge Skahill to contact Kevin directly for the limited purpose of confirming his representation and discussing the status of the case after having been unable to confer with his counsel, (ECF 20).

    Judge Skahill entered an order to show cause why Kevin's counsel should not be sanctioned for failure to comply with his orders on September 30, 2022, (ECF 21), and on October 17, 2022, Kevin filed an answer to Plaintiff's interpleader complaint – stipulating to the facts as articulated in the complaint, (ECF 24). Kevin attached to his answer a September 27, 2022 letter

5

sent to him from the Office of the District Attorney of the 18th Judicial District of Colorado stating that Tyrone was sentenced to a forty-year term as part of guilty plea. (ECF 24-1). On the same day as the filing of his answer, Kevin moved to vacate default pursuant to Federal Rule of Civil Procedure 55(c). (ECF 26).

Plaintiff moved for entry of default judgment against Tyrone on October 31, 2022 – additionally seeking for the Clerk to either relinquish interpleader funds to Kevin or retain them until future order of the Court, Plaintiff to be dismissed with prejudice, Plaintiff to be discharged from any liability relating to the policy, benefits, or interpleader funds, and Defendants to be enjoined from future actions relating to the policy, benefits, or interpleader funds. (ECF 30).

**II. Discussion**

  **A. Jurisdiction**

The Court possesses original jurisdiction over this interpleader action because the remaining policy proceeds exceed $500, Plaintiff has deposited the proceeds into the Registry of the Court, and Defendants are diverse in citizenship and have – or may – claim entitlement to the remaining proceeds. See 28 U.S.C. § 1335(a); see also U.S. Life Ins. Co. in City of N.Y. v. Holtzman, 723 F. App'x 141, 144 (3d Cir. 2018); Stonebridge Life Ins. Co. v. Kissinger, 89 F. Supp. 3d 622, 623-24 (D.N.J. Feb.

19, 2015).

## B. Entry of Default and Default Judgment

Entry of default judgment is a two-step process governed by Federal Rule of Civil Procedure 55.  See Paniagua Grp., Inc. v. Hosp. Specialists, LLC, 183 F. Supp. 3d 591, 599 (D.N.J. Apr. 28, 2016).  First, pursuant to Federal Rule of Civil Procedure 55(a), the clerk must enter default against a party from whom relief is sought when they have "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); see also Alpine Fresh, Inc. v. Jala Trucking Corp., 181 F. Supp. 3d 250, 257-58 (D.N.J. Mar. 31, 2016) (finding that entry of default was proper when the defendant did not enter appearance, file an answer, or otherwise respond to the complaint).

After entry of default, the movant may seek entry of default judgment from the clerk or court.  Fed. R. Civ. P. 55(b); Paniagua Grp., Inc., 183 F. Supp. 3d at 599.  A court must determine prior to entry of default judgment whether (1) sufficient proof of valid service and jurisdiction has been provided, (2) the facts as unchallenged present a legitimate cause of action, and (3) entry of default judgment is otherwise proper under the circumstances.  Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 683 (D.N.J. Aug. 13, 2015).  Whether entry of default is proper is determined by considering "(1) whether the party subject to default has a meritorious defense, (2) the

7

prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Id. at 686 (quoting Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. Apr. 7, 2008)).  In conducting its analysis, a court should accept all "well-pleaded" factual allegations in the complaint as true but need not accept legal conclusions or allegations relating to damages. Polidoro v. Saluti, 675 F. App'x 189, 190 (3d Cir. 2017) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

"Where the motion for default judgment is made as to only one defendant in a multi-defendant case, 'the preferred practice is for the court to withhold granting default judgment until the action is resolved on its merits against non-defaulting defendants . . . .'" Alpine Fresh, Inc., 181 F. Supp. 3d at 258 (quoting Animal Sci. Prods., Inc. v. China Nat'l Metals & Mins. Imp. & Exp. Corp., 596 F. Supp. 2d 842, 849 (D.N.J. Dec. 30, 2008)); see also Catanzaro v. Fischer, 570 F. App'x 162, 165 (3d Cir. 2014) ("Although the District Court has discretion to enter a default judgment, in this circuit, we prefer that cases be adjudicated on the merits." (citing Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984))).

Finally, entry of default may be set aside "for good cause."  Fed. R. Civ. P. 55(c).  Courts determining whether to vacate default consider "(1) whether the plaintiff will be

8

prejudiced by a vacatur of default, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's culpable conduct led to the entry of default." Tormasi v. Lanigan, 363 F. Supp. 3d 525, 532 (D.N.J. Jan. 28, 2019) (citing Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982)).

## III. Analysis

### A. Kevin's Motion to Vacate Entry of Default (ECF 26)

The Court will first consider Kevin's motion to vacate by evaluating the above-described factors – prejudice to Plaintiff, the merit of Kevin's defenses, and the culpability of Kevin's conduct. See id.

Beginning with prejudice to Plaintiff, Plaintiff has not only declined to file an opposition to Kevin's motion but has also expressed to Judge Skahill on multiple occasions that it consented to vacating default. (ECF 14; ECF 20). Kevin's counsel's declaration in support of the instant motion further indicates that he has consulted with Plaintiff's counsel and that Plaintiff does not oppose the motion to vacate. (ECF 27 at ¶ 3). As explained in Plaintiff's January 28, 2022 letter to Judge Skahill requesting a case-management conference, Kevin's failure at the time to respond to the interpleader complaint prevented Plaintiff from moving forward with its case. (ECF 14 at 2). If anything, the Court reads both Plaintiff's lack of

9

opposition here and filings throughout the course of this action as demonstrating a likelihood of prejudice if the court were to deny the pending motion rather than to grant it.  See Vargas v. Eckhardt, No. 18-12803, 2018 WL 4676050, at *3 (D.N.J. Sept. 28, 2018) (finding good cause to vacate default due to improper service and the plaintiffs' consent).

    Next, the Court itself finds merit in Kevin's potential legal arguments.  A court weighing a motion to vacate entry of default need not analyze the ultimate legal merit of a defense, "[i]t is enough that a defendant's allegations, if true, could defeat the allegations set out in the Complaint." Baptiste v. Jallow, No. 16-4593, 2018 WL 11475592, at *2 (D.N.J. Oct. 23, 2018) (citing Getty Petroleum Mktg., Inc. v. Saini, No. 05-4732, 2007 WL 465451 (D.N.J. Feb. 7, 2007)).  Though Kevin's motion and supporting declaration do not themselves detail his legal argument, the answer to the interpleader complaint – filed that same day – asserts that the conditions necessary to disqualify Tyrone as a beneficiary have been met following his September 15, 2022 sentencing for murder and seeks the remainder of the policy proceeds.  (ECF 24).  Because Plaintiff's interpleader complaint is specifically premised on its inability to determine how to distribute the remaining policy proceeds due to Tyrone's potential disqualification or disclaiming of his share of the benefits under the common law, Colorado's slayer statute, or the

10

terms of the policy, (ECF 1 at ¶¶ 11-23), the Court finds merit in Kevin's legal position.

Finally, with respect to culpability, the Court notes that more than mere negligence is required, and culpable conduct has been found by way of "[r]eckless disregard for repeated communications from plaintiffs and the court." Baptiste, 2018 WL 11475592, at *3 (alteration in original) (quoting Hritz, 732 F.2d at 1183). Counsel's declaration in support of Kevin's motion stipulates to the facts as recited in Plaintiff's counsel's April 2021 declaration in support of entry of default, (ECF 27 at ¶ 2), which itself stated that Plaintiff's counsel was informed that Kevin was represented by counsel in January 2021 and Kevin's counsel had confirmed that fact, (ECF 9-1 at ¶ 8). Kevin's counsel did not, however, enter appearance until September 10, 2021. (ECF 13). Thereafter, following Judge Skahill's February 28, 2022 order for Kevin's counsel to update his firm name and email address and move to vacate entry of default, (ECF 17), counsel did not attend the subsequent status conference, (ECF 19), and did not update his information or file the instant motion until October 17, 2022, (ECF 25; ECF 26), after Judge Skahill had entered an order to show cause why sanctions should not be imposed for failure to comply with court orders, (ECF 21).

These significant delays from Kevin's counsel are

11

unaccounted for in the pending motion and supporting declaration. The Court recognizes, however, that Kevin's answer and motion to vacate were filed within three weeks of the letter confirming Tyrone's sentencing – a fact important to Kevin's position. (ECF 24; ECF 24-1; ECF 26). Further, to the extent that Kevin's counsel's actions may rise beyond mere negligence, the Court is reminded that "where a party moves to set aside a default, courts should decide doubtful cases in favor of the party moving to set aside a default entry 'so that cases may be decided on their merits.'" See McIlwain, LLC v. Berman, No. 17-1257, 2018 WL 2357745, at *5 (D.N.J. May 24, 2018) (quoting United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)). Kevin's motion to vacate entry of default will therefore be granted.

### B. Plaintiff's Motion for Entry of Default Judgment (ECF 30)

The Court next addresses Plaintiff's motion to enter default judgment against Tyrone. As stated above, courts determine whether there is sufficient proof of service and jurisdiction, a legitimate cause of action, and entry of default judgment is otherwise proper based on whether the nonmovant has a meritorious defense, the prejudice suffered by the movant, and the culpability of the nonmovant. Matos, 133 F. Supp. 3d at 683, 686. Courts within the Third Circuit have applied this

same basic legal framework even when defendants against whom default judgment has been sought have been incarcerated. See Chubb Indem. Ins. Co. v. Rosenberg, No. 2:22-CV-00633, 2022 WL 17811725, at *3-5 (W.D. Pa. Dec. 19, 2022); H.S.A. v. Bragg, No. 1:21-cv-00054, 2021 WL 3545065, at *2 (M.D. Pa. Aug. 11, 2021).

    First, the Court is satisfied that it has jurisdiction over this matter and that Tyrone has been properly served. The record shows that Tyrone was personally served by an Arapahoe County deputy sheriff on October 1, 2020. (ECF 6). Jurisdiction exists for statutory interpleader when – as is the case here – the amount in controversy exceeds $500, two or more adverse claimants are diverse in citizenship, and the property at issue has been deposited into the Registry of the Court. See 28 U.S.C. § 1335(a); Holtzman, 723 F. App'x at 144. Further, the Court finds that it may exercise personal jurisdiction pursuant to Section 2361, which provides for nationwide service of process for statutory interpleader actions. See 28 U.S.C. § 2361; see also Am. Gen. Life Ins. Co. v. Haskoor, No. 16-808, 2017 WL 1591846, at *1 (D.N.J. Apr. 28, 2017) (finding that personal jurisdiction existed because the interpleader plaintiff served each party in the United States and the parties appeared to have minimum contacts with the United States); Fed. R. Civ. P. 4(k)(1)(C) (permitting the establishment of personal jurisdiction over a defendant via service "when authorized by a

13

federal statute"); Jonathan Remy Nash, National Personal Jurisdiction, 68 Emory L.J. 509, 527 n.99 (2019) ("[T]he district courts derive subject matter jurisdiction from 28 U.S.C. § 1335. The basis for nationwide personal jurisdiction is found in 28 U.S.C. § 2361.").

The Court also concludes that the facts as presented by Plaintiff and unchallenged by Tyrone represent a legitimate cause of action. The policy at issue names Defendants as equal beneficiaries and Plaintiff's interpleader complaint asserts that there is ambiguity as to how to distribute Tyrone's potential share due to his involvement in Mae's death. (ECF 1; ECF 1-2). This Court, under similar circumstances, has concluded interpleader action to be appropriate. See Kissinger, 89 F. Supp. 3d at 626-27 (concluding that the interpleader action was appropriate because whether the insured's ex-wife was entitled to proceeds under multiple theories was in dispute).

Finally, the Court holds that entry of default is otherwise appropriate under the circumstances. First, Tyrone has not offered a meritorious defense by virtue of his failure to file an answer or otherwise respond and the Court is unable to identify one on the face of the interpleader complaint. The Court may thus assume that Tyrone has no such defense available to him. See Jackson Hewitt, Inc. v. Dupree-Roberts, No. 13-00388, 2013 WL 4039021, at *6 (D.N.J. Aug. 7, 2013) ("Defendant

14

has been unresponsive to this action.  Defendant has offered no defense, and the facts asserted in the Complaint do not contain any information that could provide the basis for a meritorious defense.  The Court assumes that the Defendant has no litigable defenses available.").

    Second, the Court finds that Plaintiff would be prejudiced if it were to decline to enter default judgment.  The interpleader complaint states that Plaintiff is ready, willing, and able to pay out the remaining policy proceeds, has no interest in who the ultimate beneficiary might be, and is unable to determine itself who is entitled to the remaining proceeds – exposing it to multiple potential claims.  (ECF 1 at ¶¶ 23-25).  Plaintiff further asserts in its supporting brief that it would be prejudiced by denial as it would be unable to discharge its obligation under the policy and remain exposed to multiple potential claims.  (ECF 30-4 at 6-7).  The Court agrees that prejudice to Plaintiff weighs in favor of entry of default judgment.  See Phoenix Ins. Co. v. Small, 307 F.R.D. 426, 434 (E.D. Pa. May 19, 2015) (concluding, in an action stemming from fire-related property damage, that denial of default judgment would have prejudiced the insured and insurer as it would have exposed them to litigation with multiple insurers as opposed to the proposed collective adjudication of the deposited proceeds).

    Third and finally, the Court finds that Tyrone is culpable

for his considerable and continued delay in participating in this action. Tyrone was served more than two-and-a-half years ago, (ECF 6), and Plaintiff has represented to Judge Skahill that it has mailed Tyrone its request and declaration in support of entry of default, a letter informing him of the then-upcoming status conference with Judge Skahill, and a benefit-waiver form, (ECF 18; ECF 18-2). Tyrone has nonetheless failed to respond in any way to this action. The Court concludes that Tyrone's "incarceration does not excuse his failure to appear in this matter," Rosenberg, 2022 WL 17811725, at *4 (collecting cases), and the final prong of the default-judgment analysis is met.

The Court, having concluded that entry of default judgment against Tyrone is appropriate, will also order that the interpleader funds be distributed from the Registry of the Court to Kevin. Plaintiff's supporting brief asserts that Tyrone pled guilty to Mae's murder, (ECF 30-4 at 1-2, 9), and includes a copy of Tyrone's page on the Colorado Department of Corrections "Offender Search," (ECF 30-2). The record also includes a letter sent to Kevin from the Office of the District Attorney of the 18th Judicial District of Colorado confirming that Tyrone pled guilty to murder and has been sentenced to forty years in prison. (ECF 24-1). The terms of the policy state that no payment will be made to any individual who is the principal or accomplice in the death of the insured and that, in such event,

16

payment of proceeds will be made as if such individual predeceased the insured.  (ECF 1-2 at 6).  The policy also states that "[t]he Death Benefit will be paid in equal shares to the first beneficiary(ies) who survives [the insured] by 15 days."  (Id.).

Under both New Jersey and Colorado law, interpretation of an insurance policy is a matter of contract law and courts give effect to the plain and ordinary meaning of the policy's terms. See Del. Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co., 519 F. Supp. 3d 178, 181-82 (D.N.J. Feb. 16, 2021) ("Under New Jersey law, the interpretation of an insurance policy is a 'question of law.'  The language of an insurance policy 'should be interpreted according to its plain and ordinary meaning.'" (citation omitted) (first quoting Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 46 A.3d 1272, 1276 (N.J. 2012) and then Voorhees v. Preferred Mutual Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992))); Cherry Hills Farm Ct., LLC v. First Am. Title Ins. Co., 428 F. Supp. 3d 516, 520 (D. Colo. Dec. 6, 2019) ("In interpreting the terms of an insurance policy, courts 'must enforce the plain language of the policy unless it is ambiguous.'" (quoting Hoang v. Assurance Co. of Am., 149 P.3d 798, 801 (Colo. 2007))).  Here, the Court holds that the terms of the policy unambiguously state that Tyrone is to be deemed to have predeceased Mae, leaving Kevin as the sole surviving

17

beneficiary.[1]

Finally, the Court finds that Plaintiff will have discharged its obligations under the policy following the payment of the remaining policy proceeds to Kevin.  Therefore, to the extent that such relief has not already been provided in the Court's prior opinion and order, (ECF 7 at 12; ECF 8 at 2-3), the Court will discharge Plaintiff from all liability related to the underlying policy and related benefits and proceeds and enjoin Defendants from commencing future actions related to the policy, benefits, or proceeds.  See JPMorgan Chase Bank, N.A. v. Neu, No. 17-3475, 2017 WL 2290142, at *3 (D.N.J. May 24, 2017) ("Section 2361 authorizes district courts to enter preliminary and permanent injunctions restraining claimants from instituting or prosecuting legal proceedings in state or federal courts that could affect the res at issue in an interpleader action.  Courts have 'extensive discretion under

---

[1] The Court rests its holding on the plain and unambiguous terms of the insurance policy.  It notes here, however, that to the extent that it is applicable, the Colorado slayer statute "[r]evokes any revocable (i) disposition or appointment of property made by the decedent to the killer in a governing instrument . . . ." and the effect of such revocation is "as if the killer disclaimed all provisions revoked by this section . . . ."  Colo. Rev. Stat. Ann. § 15-11-803(3)(a), (5); see also Unum Life Ins. Co. of Am. v. Linville, No. 05-cv-01677, 2006 WL 2051862, at *3 (D. Colo. July 19, 2006) (interpreting the defendant's failure to defend as an admission to the allegation that he killed the insured and was thus barred from receiving the policy proceeds).

Section 2361 with regard to the issuance and the scope of the order.'" (quoting Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L., 699 F. Supp. 2d 1344, 1351 (S.D. Fla. Mar. 22, 2010))).

**IV. Conclusion**

For the reasons stated above, Kevin's motion to vacate entry of default, (ECF 26), and Plaintiff's motion for entry of default judgment against Tyrone, (ECF 30), will be granted.  The Clerk will be directed to distribute the interpleader funds from the Registry of the Court to Kevin's counsel at the address on record.  Plaintiff will be discharged from any remaining liability concerning the policy or its benefits or proceeds and Defendants shall be enjoined from commencing future actions related to the policy, benefits, or proceeds.

An Order consistent with this Opinion will be entered.


Date: June 2, 2023              s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.